OPINION. Turner, Judge-. The underlying question for determination is whether the $463,100 of debentures represented indebtedness owing by the petitioner, or merely evidenced ownership of stock in it. It is undisputed that the debentures were issued against earned surplus to the extent of $14,313.73, and paid-in surplus to the extent of $448,-726.27. Of the latter amount, $445,803.25 resulted from a reduction in par value of the petitioner’s par value common stock and the remainder, $2,923.02, represented payments on subscribed for, but unissued, capital stock which were transferred to paid-in surplus in 1938. As to the paid-in surplus of $448,726.27, the respondent concedes that it represents money which originally had been invested in the petitioner. It thus appears that the debentures were issued dollar for dollar against paid-in or earned surplus, both of which the corporation was at liberty to distribute pro-rata to its stockholders,[1] and, even though there was no paying in or borrowing of new money, the consideration for their issuance was in an amount equal to face value. There is no comprehensive rule by which the question here presented can be determined. Consideration must be given not only to the instrument involved, but to all the surrounding circumstances. While in similar cases the determining factor or factors have varied from case to case, the factors usually stated as determining are: The name given to the certificates, the presence or absence of a maturity date, the source of payments, the right to enforce the payment of principal and interest, .participation in management, status with respect to claims of general corporate creditors, and the intention of the parties. John Kelley Co., 1 T. C. 457; affld., 326 U. S. 521. In the petitioner’s minutes, in its books of account, and in its income tax returns, the debentures have been called by that name and the payments thereon have been designated interest. The debentures had a fixed maturity date for the principal and the interest was payable annually on a specified date. "While the interest was to be paid “out of available net operating income;” the fact that there might, in a given year, be no operating net income, did not relieve the corporation of payment when it did have “net operating income,” since it was provided that interest was cumulative. The debenture holders, as such, did not have any right to participate in the management of the petitioner. The respondent takes the position that there was no fixed and absolute obligation on the part of the petitioner to pay the principal of and interest on the debentures, • contending that the interest was payable only “out of available net operating income” and that the wording and punctuation of the debentures presents a question as to whether there was an obligation at maturity to pay such amount in all events, or only in the event there should be “available net operating income.” .While it is true that interest was to be paid “out of available net operating income,” we do not understand that payment or nonpayment of interest was within corporate discretion when it did have “operating net income” available for such payment[2] and that in such case the interest did not become payable in any event, and, further, while there was no provision, as in the John Kelley Go. case, for the acceleration of maturity of the obligation on principal in the event of default in the payment of interest, there was no limitation whatever to pay principal when it did become due. In other words, the only reasonable conclusion, we think, is that at maturity the obligation to pay was unqualified and absolute. In our opinion, the principal was payable at the maturity date, irrespective of what the petitioner’s “available net operating income” might be on that date or might have been during the interval. As a further bar to a holding that the indentures represented indebtedness, the respondent contends that to the extent of the paid-in surplus of $448,726.27 the debentures represented capital which originally had been invested in, and placed at the risk of, the petitioner’s business by its stockholders and that none of the debentures here involved represented “borrowed money” with respect to which the petitioner had contracted to pay anything for its use. The import of the contention is that it is essential that new or additional money must have been paid in to the corporation in order to constitute the indentures an indebtedness of the petitioner. Approximately 76 per cent of the debentures issued in the John Kelley Co. case was in exchange for outstanding capital stock and the remainder was issued on subscription. In holding that the issue of debentures there involved constituted an indebtedness and the interest was deductible, we made no distinction between those issued in exchange for stock and those issued on subscription. In affirming our holding, the Supreme Court pointed to none. The entire amount of the debentures issued was treated as indebtedness, even though no new money was paid in on account of those issued for stock and the interest thereon was held to be deductible. See also New England Lime Co., 13 T. C. 799. While in the instant case no outstanding capital stock was retired at the time the debentures were issued, the reduction in 1932 of the par value of the petitioner’s par value common stock had the same effect. with the money represented by the reduction being retained by the petitioner as paid-in surplus. The issuance of the instant debentures in 1942 against such paid-in surplus was the final step in a transaction which had the same effect as an exchange of debentures for stock. We accordingly hold that the debentures involved herein were evidences of indebtedness and that the- petitioner is entitled to the deductions taken for interest paid thereon. Reviewed by the Court. Decision will be entered wider Bule 50. See sec. 5345, vol. 77, Fletcher’s Cyclopedia of the Law of Private Corporations. Cf. Tattot Mills, 3 T. C. 95.